IN THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED

03 DEC 18 PM 4:19

EGWIGES REY,

    **Plaintiff,**

vs.                                          CIV 02-908 RB/LAM

**INTERMOUNTAIN COLOR, INC.,
MICAH GOVE and MARK ORTIZ,
as employees of Intermountain Color,
and JOHN DOES I-X,**

    **Defendants.**

## DEFENDANTS' REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants Intermountain Color, Inc., Micah Gove, and Mark Ortiz, by and through their counsel, HOLT AND BABINGTON, P.C. (Matthew P. Holt), hereby submit these Requested Findings of Fact and Conclusions of Law in accord with this Court's Non-Jury Trial Notice.

## REQUESTED FINDINGS OF FACT

1.    This matter is before the Court on an action brought by the Plaintiff under Title VII of the Civil Rights Act of 1964. Plaintiff's claims are constrained by allegations she made in any complaints filed with the EEOC.

2.    On November 16, 2001, Plaintiff filed a charge of discrimination with the EEOC. She alleged that she had been subjected to harassment, disparate treatment, and was demoted from her position on February 15, 2001.

3.    Although the charge of discrimination lacks specifics, Ms. Rey has testified that the harassment and disparate treatment included the following:

      a.      An altercation with a co-worker named Martin Gonzales;

      b.      Numerous occasions when various employees would refer to the Plaintiff as wetback, or use other disparaging language to refer to her national origin;

      c.      Co-workers would blow smoke in her face and spit on her truck;

      d.      Co-workers would take work from her; and

      e.      She alleges she was demoted.

4.      With regard to the incident involving Martin Gonzales, the evidence showed that it occurred in December 1997, almost four years before Ms. Rey filed her complaint with the EEOC.

5.      Martin Gonzales was not a managerial employee, but was simply one of Plaintiff's co-workers.

6.      Mr. Gonzales clearly used inappropriate language during the incident, but there is nothing to suggest the incident was prompted by any sort of animus stemming from Plaintiff's natural origin.

7.      Intermountain Color promptly investigated the incident. Their investigation was both adequate and properly documented. From their inquiries, Intermountain Color could reasonably conclude that both parties were at fault and, consequently, acted reasonably in giving both parties a reprimand.

8.      With regard to Plaintiff's complaints that she was abused with the word "wetback" and other disparaging remarks, her testimony is simply inconsistent with the testimony of those she has accused of these offenses and of those she claimed to have witnessed these offenses.

9.     There is no credible evidence that Intermountain Color knew, or should have known, that Plaintiff's co-workers were calling her wetback or were otherwise making disparaging remarks about her.

10.    With regard to Plaintiff's claims that co-workers would blow smoke in her face, the evidence in this case establishes that Intermountain Color had a no smoking policy, and that for a long time prior to her complaint to the EEOC, employees were not even allowed to smoke in the building at all.

11.    Testimony from Plaintiff's co-workers shows that employees did not blow smoke in the Plaintiff's face at any time.

12.    There is no evidence that Intermountain Color knew, or should have known, that employees were blowing smoke in the Plaintiff's face.

13.    The Plaintiff also complains that someone would spit on her truck and/or throw food on it. Even Plaintiff, however, does not attribute this to any particular person.

14.    There is no evidence that Intermountain Color knew, or should have known, that any co-workers were spitting or throwing food on Plaintiff's truck.

15.    The Plaintiff complains that co-workers would take work from her. Plaintiff was working as an inserter. She was paid an hourly wage and was also paid additional monies based upon the number of inserts that she could put in a publication per hour. Therefore, the more inserts she placed the more money she made.

16.    Although the Plaintiff complains that other people took inserts from her so that she could not make as much money, the evidence in this case shows that the Plaintiff is the one that would hoard inserts, and would challenge anyone who would try to take the inserts from her.

17. With regard to this first EEOC complaint, Plaintiff finally complains that she was demoted from her position on February 15, 2001.

18. This alleged demotion followed an incident involving Neil McGowan, one of the Plaintiff's co-workers. Mr. McGowan had received permission to lay down anti-fatigue mats that he could walk and stand on while working at Intermountain Color. Plaintiff became enraged that this mat had been placed near her workstation, and pulled it up and threw it under another workstation. When the mat was replaced, she repeated this action. Neil McGowan, aggrieved by the Plaintiff's behavior, complained to management.

19. Due to the interpersonal problems that Plaintiff had with the co-workers in the inserting area, culminating with the incident involving Mr. McGowan, Plaintiff was removed from doing inserts and placed in the bindery for one week. During that week, Plaintiff chose not to work very many hours and, therefore, earned less money than she would normally earn.

20. After being assigned to the bindery for a week, she was once again allowed to work the inserting line, and quickly began to make even more money than she had before.

21. On March 22, 2002, Plaintiff filed another charge of discrimination with the EEOC. In the second charge of discrimination she alleges that she was the victim of retaliation. Specifically, she claimed that all of the employees at Intermountain Color were evaluated on January 15, 2002, and that she was the only one who did not receive a pay increase. She claims this happened because of her prior charge of discrimination.

22. The average wage being earned by an inserter at that point in time was $6.85 per hour. The Plaintiff was making $7.30 per hour.

23. Management determined not to raise Plaintiff's salary beyond what it was because of her reoccurring problems in cooperating with her co-workers. Their decision in this regard is

amply documented in Plaintiff's personnel file, and was warranted by the circumstances that then existed.

### REQUESTED CONCLUSIONS OF LAW

1.  Defendants have not discriminated against Plaintiff because of her national origin.

2.  Defendants have not retaliated against Plaintiff because of her natural origin.

Respectfully submitted,

HOLT & BABINGTON, P.C.

By: _____
MATTHEW P. HOLT
Post Office Box 2699
Las Cruces, NM 88004-2699
(505) 524-8812

### CERTIFICATE OF DELIVERY

I hereby certify that on this 18th day of December 2003, I mailed a true and correct copy of the foregoing pleading to:

Rita Nuñez Neumann
Attorney at Law
1850 N. Solano Drive
Las Cruces, NM 88001

_____
MATTHEW P. HOLT