IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED

03 DEC 23 AM 9: 35

EDWIGES(VICKY) REY,

**Plaintiff,**

v.

INTERMOUNTAIN COLOR, INC., et al.

**Defendants.**

Case No. CIV 02-0908

RB/LAM

## PLAINTIFF'S REQUESTED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

## I. SYNOPSIS OF FACTS

Plaintiff claims to have been discriminated based upon national origin. She was born and raised in Juarez, Mexico but is a permanent resident of the United States. Over a period of eight years Ms. Rey was subjected to severe harassment, including but not limited to other employees calling her "wetback", and telling her to peddle her ass in Juarez. Employees threw food, paint and spit on her automobile. The employees constantly told her to "fuck herself" and that she was a mule for working so hard. She was even physically attacked by one man. Ms. Rey was demoted because of her complaints and attempting to stand up for herself. She claims the discrimination against her stems from being a Mexican National.



## II. ISSUE:

Do the acts and omissions of the Defendants constitute discrimination based upon alienage and retaliation for filing an EEOC Claim thereby violating Title VII of the Civil Rights Act of 1964; 42 U.S.C. Section 2000 (e)-16 (1064), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-66, 105 Stat. 701 (1991)?

## III. REQUESTED FINDINGS OF FACT:

1. Plaintiff was first employed at Intermountain Color on November 16, 1993 as an inserter for advertisements in newspapers.

2. Plaintiff is a Hispanic female from Juarez, Mexico and does not speak English, but is a permanent resident of the United States.

3. Plaintiff was extremely efficient in her work, and although she was paid only $7.00 per 1000 inserts, she was able to average 3000 to 3500 inserts per hour. On a yearly basis she was earning approximately $18,000 per year.

4. On November 16, 2001 Ms. Rey filed an EEOC Claim for discrimination based upon alienage.

5. Thereafter, Ms. Rey received a Right to Sue Letter and timely filed a suit in federal court.

6. Thomas L. Creager was the Chief Financial Officer of Intermountain Color, Inc. on August 1, 2002.

7. Mr. Creager sent an answer to the court on Ms. Rey's Federal Complaint in the form of a letter dated August 1, 2002. In the letter Mr. Creager acknowledged that witnesses heard Martin Gonzales call Ms. Rey a "wetback", and that someone spit on her truck.

8. At the time of the incidents the Plaintiff was the only employee of Intermountain Color, Inc. at the Las Cruces location that did not speak English.

9. Martin Gonzales, Dolores Gonzales, and Neal McCowan were co-workers of the Plaintiff at Intermountain Color, Inc.

10. Martin Gonzales threw the Plaintiff against the table she works at, and called her a "wetback", and told the Plaintiff to go peddle her ass in Juarez.

11. Plaintiff was injured as a result of the attack by Martin Gonzales.

12. Plaintiff was disciplined because of the incident described above.

13. The stated employees wrote "wetback" on the Plaintiff table.

14 The employees threw food at Plaintiff new truck, and put grease and paint on the truck.

15 Dolores Gonzales took work from the Plaintiff, and would not let her do inserts, which pay the best; thereafter the Defendant told the Plaintiff you are mad because your husband would not give you a little last night.

16. The employees constantly stated to the Plaintiff, "fuck you!".

17. Witnesses observed that Martin Gonzales go over and push Vickie, point his finger at her threatening her, make fun of her when she started to cry, grab inserts from her, called her a wetback and other insulting names, and tell her to go back to Mexico because she did not speak English.

18. The employees constantly criticized the Plaintiff's appearance because she had her hair, and nails done, and her clothing was purchased in Mexico.

19. On February 15, 2001 Neal McCowan laid carpet in front of Rey's table.

20. After the Plaintiff tripped on the carpet, the Plaintiff placed the carpet under her table

21. Neal McCowan continued to remove the carpet and place it in front of her table, and she continued to remove it.

3

22. Neal McCowan was generally designated to work in another area of the business, and not the vicinity of the Plaintiff.

23. Neal McCowen went and complained to Manager, Micah Gove, who does not speak Spanish.

24. As a result of the incident Micah Gove sent Mark Ortiz, the Supervisor, to the Plaintiff to remove her from doing inserts.

25. Plaintiff was then given work as a binder for only a few hours a week; said change was significant in terms of the Plaintiff's income, and was in her opinion a demotion.

26. Plaintiff was never given an opportunity to explain her side of the story.

27. Defendant Micah Gove called the Plaintiff a "problematic female".

28. Eventually, the Plaintiff did fall because of the carpet laid by McCowan, and received severe injury to her right shoulder, and arm. Said injury resulted in a lost of ten days of work.

29. After returning to work, the Plaintiff fell a second time on the carpet, which resulted in an injury to her left knee. Again no one allowed her to give her side of the story.

30. Although the employment area was designated non-smoking, Plaintiff's co-workers were allowed to smoke.

31. Plaintiff was allergic to tobacco smoke, and complained about the problem to Micah Gove.

32. Mike Gove did nothing to stop the smoking, and in fact allowed the co-workers to throw lit cigarettes on top of her table, where she worked.

33. On January 11, 2002 all the employees were evaluated.

34. Ms. Rey's evaluation stated that she was a very fast inserter, always willing to work when needed, always on time, and ready to work .

35. Ms. Rey's evaluation placed on her the burden of accepting the discriminatory remarks by co-

4

workers, and criticized her as not being co-operative because of her attitude.

36. Ms. Rey contends that her evaluation reflected the fact that she had filed an EEOC Claim and that she was being retaliated against because of the filing.

37. Ms. Rey contends that the Defendant's evaluation did fairly reflect the truth and the evaluation was part of a fraudulent paper trail designed to discredit her in her EEOC claim.

38. Ms. Rey was the only employee who did not receive a raise after the 2002 evaluation.

39. On March 8, 2002 Ms. Rey filed a claim for retaliation with the EEOC.

40. Plaintiff contends that the Defendant, through the Defendants Gove and Ortiz, allowed a hostile environment based upon Ms. Rey's alienage.

41. Ms. Rey contends that the Defendant actively engaged in refusing to stop the discrimination against Ms. Rey.

42. Ms. Rey contends that the defendant has manufactured reasons to discredit Ms. Rey in an effort to disguise the truth about the discrimination.

43. In Ms. Rey's January 21, 1999 evaluation, it was noted that she was definitely a "team player", very co-operative with supervisors, had a very good attitude towards work, and accepted criticism.

44. The January 31, 2001 evaluation stated again Ms. Rey had a very good attitude towards work, and that any problems she had were working out "just fine now".

45. However, after Ms. Rey filed her EEOC claims in February of 2001, her evaluations changed. After working for the company nine years she received her January 11, 2002 evaluation stating Ms. Rey does not accept constructive feedback well.

46. Ms. Rey contends that the hostility in the work environment made her work conditions

miserable.

## IV. PLAINTIFF'S REQUESTED CONCLUSIONS OF LAW:

### INTRODUCTION

In analyzing the validity of a Title VII Claim, there are three major steps. First, the Plaintiff must meet the familiar burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell the Plaintiff initially has the burden of establishing a prima facie case of discrimination. Reynolds v. School District No.1, 69 F.3d 1523, 1533 (10th Cir. 1995). Once the plaintiff has made out a prima facie case, then the burden shifts to the Defendant Employer, which must then offer a facially nondiscriminatory reason for the challenged employment action. Id. After the Employer has given his nondiscriminatory reasons, the burden shifts back to the employee to show that there is a genuine issue of fact as to whether the employer's proffered reason is merely pretexual. Morgan v. Hilti, Inc., 108 F 3d 1319, 1323 (10th Cir. 1997), Randle v. City of Aurora, 69 F 3d 441,451 (10th Cir. 1995). In order to prove the Plaintiff's Title VII Claim of Discrimination based upon alienage, and a Claim of Retaliation, the remainder of the legal conclusions deal with the reasonable victim standard used to determine discrimination in a hostile environment, what is a hostile environment, what Title VII covers, what constitutes a prima facie case of retaliation, and what constitutes pretext and how it can be shown by inconsistencies.

## A. THE COURT SHOULD APPLY THE REASONABLE VICTIM STANDARD IN REVIEWING WHETHER THE ENVIRONMENT WAS HOSTILE.

The courts have held that the reasonable victim standard should be applied to cases alleging ethnic and racial harassment. See Duplesis v. TDC, 835 F.Supp 671 (D. Maine 1993)(applying "reasonable Franco American Standard to American of French Ancestry, in case alleging national origin harassment.); Harris v. Int'l. Paper Company, 765 F. Supp. 1509, 1515 (D. Me 1991)(applying " reasonable black person " standard in hostile environment racial harassment case; " the standard for assessing the un-welcomeness and pervasiveness of conduct and speech must be founded on a fair concern for different social experiences of men and women in the case of sexual harassment, and of White Americans and Black Americans in the case of racial harassment.") In Nichols v. Frank, 42 F. 3d 503 (9th Cir, 1994) the court added that in proving the requisite intent, the fact finder could properly consider the gender and other immutable characteristics of the accuser as well as other traits of the victim that were known to the accused that made the victim particularly susceptible to quid pro quo sexual harassment. Ms. Rey was sensitive to the use of profanity directed at her, and the physical and psychological abuse of her fellow employees. Ms. Rey contends her sensitivity was reasonable and that the court should consider her sensitivities in determining whether the environment was hostile.

**B. A HOSTILE ENVIRONMENT CLAIM SURVIVES WHEN THE FACTS SHOW THE WORKPLACE IS PERMEATED WITH DISCRIMINATORY INTIMIDATION, RIDICULE, AND INSULT.**

The courts have determined that an environment is hostile when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe, or pervasive to alter the conditions of the victim's employment and create an abusive working environment. See Penry v. Federal Home Loan Bank, of Topeka, 155 F. 3d 1257, 1261 (10th Cir. 1998)(quoting Davis v. U.S. Postal Service, 142 F. 3d 1334, 1341 (10th Cir 1998)...While we judge that atmosphere both objectively and subjectively, Harris, 510 U.S. at 21-22, we must look at all the circumstances "from the perspective of a reasonable person in the Plaintiff's position." Oncale v. Sundowner Offshore Servs., Inc. 523 U.S. 75, 81 (1998).

\*\*\*

Accordingly, when we examine the context of this Title VII Claim, we look at both the specific hostility targeting the plaintiffs as well as the general work atmosphere. Thus, even if a comment about Plaintiff's baggy pants or low riders might not be explicitly racial, given the context of the statement, it could be reasonably inferred the remarks were related to Plaintiff's race and were part of an ongoing, pervasive environment of racial taunting. See McGowen, et al v All Star Maintenance, Inc., et al., 00-2040, (C.A. 10th Cir., 2001). The continual use of the term "wetback" in the workplace both orally and in writing, and the spitting on her vehicle without other considerations should suffice to allow the court to find a hostile environment.

## C. TITLE VII COVERS MORE THAN ECONOMIC OR TANGIBLE DISCRIMINATION, AND COVERS MORE THAN TERMS AND CONDITIONS.

The courts have held that although employment discrimination provision of Title VII mention specific employment decisions with immediate consequences, scope of the prohibition is not limited to "economic" or "tangible" discrimination and covers more than terms and conditions of employment in the contractual sense. Civil Rights Act of 1964, Section 703(a)(1), 42 USCA Section 2000(e)-2(a)(1). See Faragher v. City of Boca Raton, 118. S.Ct. 2275 (1998). The definition of a discriminatorily abusive work environment…under Title VII … prohibits discrimination in employment terms and conditions which results from requiring people to work in a discriminatorily hostile or abusive environment. See Doe by Doe v. City of Belleville, Ill., 119 F.3d 563 (7th Cir. 1997). The Test under Title VII is not whether work has been impaired but whether working conditions have been altered. See Id. The facts indicate the work place presented both oral and physical assaults upon Ms. Rey. Ms. Rey contends the court should find she had to work in an abusive environment.

## D. INORDER TO MAKE OUT A PRIMA FACIE CASE OF RETALIATION UNDER TITLE VII, A PLAINTIFF MUST OFFER EVIDENCE THAT HE ENGAGED IN PROTECTED ACTIVITY THAT RESULTED IN AN ADVERSE EMPLOYMENT DECISION.

In order to make out a prima facie case of retaliation under Title VII, a plaintiff must offer evidence that he engaged in protected activity that resulted in an adverse employment decision. See Koelsch v. Beltone Elecs. Corp. 46 F. 3d 705, 708 (7th Cir. 1995); Dey, 28 F.3d 1457,1458. The filing of the EEOC claim was a protected activity. Ms. Rey contends that the evaluation and

9

not giving her a pay raise were motivated by her filing of the EEOC Claim, and therefore causally connected to the adverse work action. Furthermore, courts have held that a plaintiff may maintain an action for retaliation based upon participation in a protected proceeding regardless of whether the conduct forming the basis of the underlying complaint is adjudged to violate Title VII. See Jeffries v. Kansas, 147 F.3d 1220, 1231 (10th Cir. 1998). Therefore, Ms. Rey contends the court should find that her claim of retaliation is well based and should be upheld.

## D. INCONSISTENCY CONSTITUES SUFFICIENT EVIDENCE OF PRETEXT.

The courts have held that inconsistency constitutes sufficient evidence of pretext. See Dey v. Colt Construction and Development Co., 28 F. 3d 1446, 1460-61 (7th Cir. 1994). In reviewing the Admissions submitted by the Defendant, and the Initial Answer submitted by Thomas L. Creager, Chief Financial Officer of the Defendant, in the form of a letter we find the following inconsistencies:

In Admission No. 1 the Defendant denied Martin Gonzales assaulted Ms. Rey and used Abusive language on her, however Mr. Creager admitted Martin Gonzales pushed Ms. Rey, and called her "wetback". The Defendant has also entered into evidence a statement by Mark Ortiz, in which he states witnesses observed that Martin Gonzales went over and pushed Vickie, pointed his finger at her threatening her, made fun of her when she started to cry, grabbed inserts from her, called her a wetback and other insulting names, and told her to go back to Mexico because she does not speak English.

In Admission No. 3 the Defendant denied at least one employee spit on Ms. Rey's truck,
Whereas Mr. Creager admitted evidence that someone spit on her truck but that he did not
run DNA tests to determine who did it.

Another inconsistency lies in the yearly evaluations of Ms. Rey starting in 1999.
In Ms. Rey's January 21, 1999 evaluation, it was noted that she was definitely a "team
player", very co-operative with supervisors, had a very good attitude towards work, and
accepted criticism. The January 31, 2001 evaluation stated again Ms. Rey had a very good
attitude towards work, and that any problems she had were working out "just fine now".
However, after Ms. Rey filed her EEOC claims in February of 2001, her evaluations
changed. After working for the company nine years she received her January 11, 2002
evaluation stating Ms. Rey does not accept constructive feedback well.

The courts have held that to establish pretext a plaintiff must show either that a discriminatory
reason more likely motivated the employer, or ...that the employer's proffered explanation is
unworthy of credence. See Texas Dep't. of County Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Mr. Creager has stated that Ms. Rey's claims are without merit, and that he resented
spending time and money defending against her claims. He also notes that this is the fourth
time Intermountain Color has had to address claims by Ms. Rey. This is not only in
contrast to Admission No. 6, in which Micah Gove, Ms. Rey's supervisor, denies being
told by Ms. Rey about problems, but it reflects on the Defendant's motivation.

11

## CONCLUSION

The requested findings of fact and law show that Intermountain Color, Inc. violated Title VII by allowing a hostile environment which discriminated against Ms. Rey based on her alienage, and that further actions by the Employer were in retaliation to her initial EEOC filing.

Submitted by:

Rita Nuñez Neumann
Attorney for Plaintiff
1850 North Solano Drive
Las Cruces, N.M. 88001
Ph.: (505) 647-3778

### Certificate of Mailing/Faxing/Emailed

I certify a copy of this document was mailed, emailed, and faxed to Matt Holt, Attorney for Intermountain Color, Inc. on December 22, 2003.

Rita Nuñez Neumann