

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

04 JAN 16 PM 2: 05

*[signature]*

CLERK - LAS CRUCES

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**EDWIGES REY,**

      Plaintiff,

vs.

**INTERMOUNTAIN COLOR, INC.,**
**MICAH GOVE and MARK ORTIZ,**
as employees of Intermountain Color, Inc.
and **JOHN DOES I-X,**

      Defendants.              CIV 02-908 RB/LAM

## FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

The Court, after a non-jury trial on Monday, January 5, 2004, and after reviewing the

Requested Findings of Fact and Conclusions of Law of the parties, and being otherwise fully

advised, makes the following findings and conclusions:

## FINDINGS OF FACT

1. This action was brought by Ms. Rey under Title VII of the Civil Rights Act of 1964.

2. Ms. Rey began working for Intermountain Color, Inc. (ICI) in 1993. ICI is a

printing/publishing company.

3. On November 16, 2001, Ms. Rey filed a charge of discrimination with the EEOC. She

alleged that she had been subjected to harassment, disparate treatment, and was demoted from her

position with ICI on February 15, 2001.

4. Ms. Rey has testified that the harassment and disparate treatment included the

following:

a.  An altercation with a co-worker named Martin Gonzales;

b.  Numerous occasions when various employees would refer to the Plaintiff as a wetback, or use other disparaging language to refer to her national origin;

c.  Unnamed co-workers would blow smoke in her face and spit on her truck;

d.  Co-workers would take work from her, including an altercation with co-worker, Dolores Gonzales; and

e.  She was demoted for improper reasons.

5.  The incident involving Martin Gonzales occurred in December, 1997, almost four years before Ms. Rey filed her complaint with the EEOC.

6.  Martin Gonzales was not a managerial employee, but was one of Plaintiff's co-workers.

7.  Mr. Gonzales clearly used inappropriate language during the incident, including referring to Ms. Rey as a "mojada" or wetback.

8.  ICI promptly investigated the Martin Gonzales incident. The investigation was both adequate and properly documented. From its inquiries, ICI reasonably concluded that both parties were at fault and, consequently, acted reasonably in giving both parties a reprimand.

9.  Ms. Rey complains that co-workers would take work from her. Ms. Rey worked as an inserter. She was paid an hourly wage and was paid additional monies based upon the number of inserts that she placed in a publication per hour. Accordingly, the more inserts she placed, the more money she made.

10.  Although Ms. Rey complains that other people took inserts from her so that she could not make as much money, Ms. Rey is the one who would hoard inserts and would

2

challenge anyone who would try to take the inserts from her.

11. It was reasonable for ICI to give Ms. Rey a written reprimand for her part in the incident involving Martin Gonzales because it reasonably believed that she had provoked the incident by hoarding inserts, she had engaged in a tug-of-war with a fellow employee, and she had yelled at her fellow employee and called him names.

12. Ms. Rey was called a "mojada" during the Martin Gonzales incident and during an incident with Dolores Gonzales several years thereafter. To the extent management was aware, the incidents were investigated and appropriate reprimands were issued. There is no evidence that management was aware of any other slurs related to Ms. Rey's national origin, nor is there any evidence that management tolerated such slurs in the workplace.

13. The incident which involved Ms. Rey and Dolores Gonzales had nothing to do with Ms. Rey's national origin.

14. In the incident involving Dolores Gonzales, Ms. Rey again was involved in a confrontation with a fellow employee stemming from Ms. Rey hoarding inserts.

15. With regard to Ms. Rey's claims that co-workers would blow smoke in her face, ICI had a no-smoking policy and, for some time prior to her complaint to the EEOC, employees were not allowed to smoke in the building at all. Ms. Rey's claims did not specify those guilty of the alleged conduct, nor any other specifics related thereto, and management was not aware of such alleged misconduct.

16. Co-workers never witnessed any smoking near Ms. Rey's work station, nor did Ms. Rey ever advise any of her co-workers or management of such offensive conduct.

17. There is no evidence that ICI knew, or should have known, that employees were

3

blowing smoke in Ms. Rey's face.

18. Ms. Rey also complains that someone spit on her truck and/or threw food or grease on it. Ms. Rey, however, does not attribute this to any particular person. Upon being advised of such conduct, ICI investigated the allegation and was unable to identify the perpetrator.

19. There is no evidence that ICI knew, or should have known, that any co-workers were spitting or throwing food on Plaintiff's truck, prior to the incident.

20. Ms. Rey's alleged demotion followed an incident involving Neil McGowan, one of Ms. Rey's co-workers. Mr. McGowan had received permission to lay down anti-fatigue mats that he could walk and stand on while working at ICI. Ms. Rey became enraged that one of these mats had been placed near her workstation, and she pulled it up and threw it under another workstation. When the mat was replaced, she repeated this action. Neil McGowan, aggrieved by Ms. Rey's behavior, complained to management.

21. It was reasonable for ICI to give Ms. Rey a written warning as a result of the incident involving Neil McGowan because she had been previously warned not to take matters into her own hands, and she first kicked the anti-fatigue mats out of her way and then threw them aside.

22. Due to the interpersonal problems that Ms. Rey had with the co-workers in the inserting area, culminating with the incident involving Mr. McGowan, Ms. Rey was removed from doing inserts and placed in the bindery for one week. During that week, Ms. Rey earned less money than she would normally earn.

23. After being assigned to the bindery for one week, Ms. Rey was again allowed to work the inserting line, and quickly began to make even more money than she had before.

24. On March 22, 2002, Ms. Rey filed another charge of discrimination with the EEOC.

4

In the second charge of discrimination, Ms Rey alleged that she was the victim of retaliation. Specifically, she claimed that all of the employees at ICI were evaluated on January 15, 2002, and that she was the only one who did not receive a pay increase.  She claims this happened because of her prior charge of discrimination.

25.  The average wage earned by an inserter in January, 2002 was $6.85 per hour.  Ms. Rey earned $7.30 an hour at that time.

26.  Management determined not to raise Ms. Rey's salary beyond what it was because of her recurring problems in cooperating with her co-workers.  Their decision in this regard is amply documented in Ms. Rey's personnel file, and was warranted by the circumstances that then existed.

27.  In Annual Employee Reviews for 1995 and 1996, Ms. Rey was described as a "team player;" however, all subsequent annual reviews of Ms. Rey mention problems Ms. Rey had in getting along with her co-workers, culminating in an Employee Warning, dated February 19, 2001, styled "The Last Warning."

## CONCLUSIONS OF LAW

1.  The Defendants have not retaliated against the Plaintiff because she filed a charge of discrimination with the EEOC on November 16, 2001.

2.  The Defendants have not retaliated against the Plaintiff because she filed a charge of discrimination with the EEOC on March 22, 2002.

3.  The Defendants have not discriminated against Plaintiff because of her national origin, as defined by Title VII of the Civil Rights Act of 1964.

4.  The Plaintiff's workplace was not a hostile work environment, as defined by Title VII

5

of the Civil Rights Act of 1964.

5. Accordingly, all claims against all Defendants should be dismissed.

6. Each side shall bear their respective attorney's fees.

7. The Defendants shall recover their costs.

8. A judgment shall issue concurrently herewith.

**ROBERT C. BRACK**
**U.S. District Judge**

6